

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PAMELA LACHER,<br>　　　　　　　Debtor. | BAP Nos.　SC-25-1174-LSN<br>　　　　　　　SC-25-1209-LSN<br>　　　　　　　(related appeals) |
| PAMELA LACHER,<br>　　　　　　　Appellant,<br><br>v.<br><br>SUPERIOR COURT FOR THE STATE OF CALIFORNIA – COUNTY OF SAN DIEGO; CAROLYN CAIETTI; SUSAN KOSKI,<br>　　　　　　　Appellees. | Bk. No. 24-03882-CL7<br><br>Adv. No. 25-90050-CL<br><br>**MEMORANDUM\*** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Chief Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and NIEMANN, Bankruptcy Judges.

---

　　\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Pamela Lacher ("Debtor") appeals the bankruptcy court's orders: (i) denying her motion for contempt against the Superior Court for the State of California (the "Superior Court"), the Hon. Carolyn Caietti, and Susan Koski, the Superior Court's General Counsel and Director of Legal Services, for alleged violations of §§ 362(a), 524(a), and 525(a);[1] and (ii) granting the Superior Court's and Judge Caietti's motion to dismiss Debtor's complaint based on similar claims.

This appeal is the latest attempt by Ms. Lacher to use the Code as a sword to terminate the disciplinary proceedings brought against her by the State Bar of California (the "State Bar"). *See Lacher v. State Bar of Cal. (In re Lacher)*, 669 B.R. 548 (9th Cir. BAP 2025). Ms. Lacher now contends that the Superior Court, Judge Caietti, and Ms. Koski must be held in contempt, or otherwise be held liable, for failing to "rescind" a prepetition referral of ethical misconduct to the State Bar that Ms. Lacher contends led to the initiation of disciplinary proceedings against her.

Ms. Lacher's arguments lack merit. As the bankruptcy court concluded, Ms. Lacher has failed to state a violation of §§ 362, 524, or 525, and the appellees are immune from Ms. Lacher's adversarial claims.

We AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTS[2]

### A. The State Court Litigation

Approximately 25 years ago, Ms. Lacher, an attorney, retained the services of East County Investigations ("ECI") on behalf of a client. *In re Lacher*, 669 B.R. at 552. ECI billed $3,830.85 for work done on the case, which Ms. Lacher refused to pay, prompting ECI to sue Ms. Lacher in state court. *Id.* ECI obtained a judgment in the amount of $2,793.85 plus attorneys' fees, costs, and interest (the "ECI Judgment"). *Id.*

Ms. Lacher spent the next two decades unsuccessfully challenging the ECI Judgment. *Id.* at 552-53. Initially, Ms. Lacher filed a complaint in the Superior Court against ECI and its owners, Jon and Sue Lane (together, the "ECI Parties") for defamation. The Superior Court dismissed this action on the ECI Parties' demurrer and awarded them $7,687.90 in fees and costs.

Ms. Lacher appealed the Superior Court's orders, prompting the California appellate court to conclude that the appeals were "frivolous" and "taken solely for the purpose of harassment and delay." Over the years, both the Superior Court and California appellate courts imposed several additional sanctions on Ms. Lacher.

As relevant to this appeal, from 2014 to 2020, the courts entered six orders requiring Ms. Lacher to, among other things, comply with discovery

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

orders and assign portions of her income to the ECI Parties. Ms. Lacher did not comply with any of these orders.

## B.     The Judgment of Contempt and the Referral to the State Bar

In January 2020, the Superior Court issued an order to show cause why Ms. Lacher should not be held in contempt for "willfully disobey[ing]" the six orders referenced above. After a hearing at which Ms. Lacher appeared, the Superior Court entered a judgment against Ms. Lacher (the "Contempt Judgment"). Ms. Lacher did not file a writ challenging the Contempt Judgment.

The judge initially presiding over Ms. Lacher's case did not immediately report the Contempt Judgment to the State Bar. Nor did Ms. Lacher report the Contempt Judgment. Eventually, the case was reassigned to Judge Caietti.

In January 2021, Judge Caietti discovered that the State Bar had not been notified of the Contempt Judgment. After briefing on the issue, Judge Caietti concluded that the court was required to report the Contempt Judgment to the State Bar pursuant to Cal. Bus. & Prof. Code § 6086.7(a)(1) and California Court Rule 10.609. Accordingly, Judge Caietti ordered the clerk of the Superior Court to report the Contempt Judgment to State Bar, which the clerk did on February 24, 2021.

## C.     The State Bar Proceedings

In June 2022, the State Bar initiated disciplinary proceedings against Ms. Lacher, alleging nine counts of misconduct. One year later, the State

4

Bar Court issued a decision finding that Ms. Lacher: (i) violated court orders; (ii) failed to maintain the respect due courts when she disregarded orders and failed to pay sanctions; (iii) maintained an unjust action with a corrupt motive when she pursued a meritless appeal to delay payment; (iv) failed to report judicial sanctions to the State Bar; and (v) commingled funds in her client trust account.

In discussing Ms. Lacher's "pattern of misconduct," the State Bar Court stated that she "has relentlessly pursued a baseless lawsuit and sought appellate redress by filing frivolous appeals – actions culminating in a judgment of contempt against her," that she "abused the judicial process and harmed [ECI] in her crusade to thwart [ECI's] collection efforts," and that her "actions are particularly troubling when the numerous sanctions imposed against her failed to alter her behavior." Based on these findings, the State Bar Court recommended a suspension of Ms. Lacher's law license.

On appeal, the State Bar Review Department affirmed many of the State Bar Court's findings, but recommended disbarment instead of suspension, concluding that "[p]ublic protection requires that [Ms.] Lacher be disbarred." The State Bar sent its recommendation to the California Supreme Court, and Ms. Lacher's license was placed on involuntary inactive status.

**D.      Ms. Lacher's Bankruptcy Case**

On October 17, 2024, prior to the California Supreme Court reviewing the State Bar's recommendation, Ms. Lacher filed a chapter 7 petition.

Upon filing her bankruptcy case, Ms. Lacher filed a motion asserting that the automatic stay prevented the disciplinary proceedings against her from moving forward and asking the bankruptcy court to reinstate her law license. The bankruptcy court denied this motion, holding that the automatic stay did not apply to attorney disciplinary proceedings.

In January 2025, Ms. Lacher received a chapter 7 discharge. Thereafter, she again attempted to halt the disciplinary proceedings by arguing that the proposed disbarment violated the discharge injunction and was discriminatory under § 525. Once again, the bankruptcy court rejected Ms. Lacher's arguments.

After Ms. Lacher appealed this determination by the bankruptcy court, this Panel also rejected Ms. Lacher's arguments, holding that the State Bar's disbarment recommendation was not based on Ms. Lacher's nonpayment of a debt to the ECI Parties, but rather on several ethical violations, a pattern of misconduct, and Ms. Lacher's abuse of the judicial process. *In re Lacher*, 669 B.R. at 564.

**E.      Ms. Lacher's Claims against the Superior Court and Judge Caietti**

Undeterred, Ms. Lacher then filed a motion for contempt against the Superior Court, Judge Caietti, and Ms. Koski, arguing that the Superior Court violated both the automatic stay and the discharge injunction (the

"Motion for Contempt"). In the Motion for Contempt, Ms. Lacher essentially argued that the Superior Court "set in motion discriminatory actions taken against" Ms. Lacher by reporting the Contempt Judgment to the State Bar. In Ms. Lacher's view, the Superior Court had an obligation to "rescind" the referral of the Contempt Judgment upon Ms. Lacher's bankruptcy filing, asserting that the failure to do so constituted continued enforcement or collection of the discharged ECI Judgment.

In addition to the Motion for Contempt, Ms. Lacher filed a complaint against the Superior Court and Judge Caietti requesting declaratory relief under §§ 362(a), 524(a), and 525(a). Among other things, Ms. Lacher requested an order voiding the Contempt Judgment and all underlying collection orders and an order rescinding the report of the Contempt Judgment to the State Bar. The Superior Court and Judge Caietti opposed the Motion for Contempt and filed a motion to dismiss Ms. Lacher's complaint (the "Motion to Dismiss").

After hearings, the bankruptcy court denied the Motion for Contempt and granted the Motion to Dismiss. With respect to the Motion for Contempt, the bankruptcy court held that Ms. Lacher had not articulated a violation of the stay or the discharge injunction. As to the Motion for Dismiss, the bankruptcy court concluded that both Judge Caietti and the Superior Court were immune under the doctrines of judicial immunity and quasi-judicial immunity. Ms. Lacher timely appealed both orders.

7

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court err in denying the Motion for Contempt?

2.  Did the bankruptcy court err in granting the Motion to Dismiss?

3.  Did the bankruptcy court err in dismissing Ms. Lacher's complaint without leave to amend?

## STANDARDS OF REVIEW

We review an order denying a motion for civil contempt for abuse of discretion. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003); *Rediger Inv. Corp. v. H. Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 731 (9th Cir. BAP 2013). The underlying factual findings are reviewed for clear error. *In re Dyer*, 322 F.3d at 1191; *In re H Granados Commc'ns, Inc.*, 503 B.R. at 731-32.

We review de novo the bankruptcy court's grant of a Civil Rule 12(b)(6) motion to dismiss. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024); *Cedano v. Aurora Loan Servs., LLC (In re Cedano)*, 470 B.R. 522, 528 (9th Cir. BAP 2012). The bankruptcy court's conclusions of law regarding judicial or quasi-judicial immunity are reviewed de novo, while findings of fact are reviewed for clear error. *See Curry v. Castillo In re Castillo)*, 297 F.3d 940, 946 (9th Cir. 2002). We review a dismissal without

8

leave to amend and with prejudice for abuse of discretion. *Tracht Gut, LLC v. Cnty. of L.A. (In re Tracht Gut, LLC)*, 503 B.R. 804, 810 (9th Cir. BAP 2014), *aff'd*, 836 F.3d 1146 (9th Cir. 2016).

When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or not supported by the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## DISCUSSION

On appeal, Ms. Lacher's primary argument is that the Superior Court's failure to "rescind" its prepetition report of the Contempt Judgment to the State Bar violated the automatic stay and the discharge injunction. Specifically, Ms. Lacher contends that the failure to "rescind" the referral violated the automatic stay because the Superior Court had an obligation to withdraw its report of the Contempt Judgment and halt the State Bar's disciplinary proceedings against her. Although unclear, Ms. Lacher also appears to argue that either the Contempt Judgment and/or the ECI Judgment became unenforceable upon entry of her discharge, and that the Superior Court's failure to withdraw its report also violated the

discharge injunction because the State Bar's continuation of disciplinary proceedings qualified as enforcement of a discharged prepetition debt.

Prior to addressing the legal merits of these arguments, we must address the overarching absurdity of Ms. Lacher's position. First and foremost, the act which is the alleged predicate for both the automatic stay and the discharge injunction occurred years before Ms. Lacher filed for bankruptcy protection. Thus, Ms. Lacher's arguments depend on her theory that the prepetition referral somehow qualifies as an ongoing proceeding as opposed to a discrete act. There is no logical reason to interpret a past ethical referral in this manner, and the timing of the referral alone provides a basis to reject all of Ms. Lacher's arguments.

But even if we ignore this glaring problem, Ms. Lacher in essence asks us to impose liability on a state court based on that court's prepetition enforcement of its own orders and regulation of Ms. Lacher's misconduct. Ms. Lacher makes this request despite the fact that the California state legislature has enshrined into law a judge's duty to report ethical violations to the State Bar. Cal. Bus. & Prof. Code § 6086.7(a)(1). Nevertheless, in Ms. Lacher's view, these crucial judicial functions, which serve to maintain the integrity of the courts, may be nullified simply because a debtor subsequently files for bankruptcy. Notwithstanding the obvious federalism concerns that would arise from such an interpretation, nothing in §§ 362, 524, and 525, or any other section of the Code, supports Ms. Lacher's view.

Finally, although the core of Ms. Lacher's argument on appeal is that the Superior Court had a duty to "rescind" its prepetition referral of the Contempt Judgment to the State Bar, to the extent a procedure even exists for a state court to rescind a report of an ethical violation, Ms. Lacher does not articulate what the effect of any such "rescission" on the State Bar's disciplinary proceedings would be. Even if the Superior Court "withdrew" or "rescinded" its prepetition referral – an act the Code does not require – such rescission would not have any meaningful impact on the State Bar's disciplinary proceedings because the Superior Court does not have any authority over such proceedings. *Jacobs v. State Bar*, 20 Cal.3d 191, 196-98 (1977) (state superior courts lack jurisdiction to interfere with the State Bar's investigations and disciplinary proceedings).

For the broader reasons stated above, as well as the legal analysis below, Ms. Lacher wholly failed to articulate any claim for relief.

**A.** **The bankruptcy court did not abuse its discretion in denying the Motion for Contempt.**

**1. Ms. Lacher did not articulate a violation of § 362(a).**

The automatic stay under § 362(a) enjoins, among other things, the commencement or continuation of any judicial proceeding against the debtor and any act to collect or recover a claim against the debtor that arose prepetition. § 362(a)(1), (a)(6); *Gruntz v. Cnty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081-82 (9th Cir. 2000) (en banc).

With respect to the stay, Ms. Lacher asserts that the Superior Court's refusal to "rescind" the referral of the Contempt Judgment to the State Bar was a violation of both § 362(a)(1) and (a)(6). Ms. Lacher's argument is unpersuasive for several reasons.

First, neither § 362(a)(1) or (a)(6) require a party, let alone a sovereign state court, to void a preexisting court order or to rescind a prepetition referral to a regulatory agency simply because a debtor files for bankruptcy. In fact, the purpose of the automatic stay is to maintain the status quo as of the petition date. *See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1173 (9th Cir. 2014) ("The automatic stay is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." (citation modified)). A so-called "rescission" of the Superior Court's prepetition referral would serve to *alter* the status quo because the Superior Court entered the Contempt Judgment and referred Ms. Lacher to the State Bar *years* before Ms. Lacher filed for bankruptcy.

Moreover, Ms. Lacher's arguments turn on the *State Bar's* continuation of the disciplinary proceeding against her, and Ms. Lacher's assertion that the *State Bar* is enforcing a prepetition debt by refusing to reinstate her license (an argument that lacks merit for additional reasons, as discussed below). The Superior Court is not involved in these proceedings and, as discussed above, does not have authority to impact the proceedings

12

in any way. To violate § 362(a)(1) and (a)(6), a party must, at a minimum, be the entity responsible for either continuing a proceeding or enforcing a prepetition judgment. Using Ms. Lacher's own recounting of events, the Superior Court is not such an entity.

These points are sufficient to dispose of Ms. Lacher's arguments under § 362(a). But we note that the Superior Court would not have violated the automatic stay even if it referred Ms. Lacher to the State Bar during the pendency of her bankruptcy case. To the extent a state court's report of an ethical violation to a state regulatory agency even qualifies as a violation under one of the subsections of § 362(a), the report would be exempt from the automatic stay by operation of § 362(b)(4).

Pursuant to § 362(b)(4), the automatic stay does not impact "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power."

Here, the Superior Court entered the Contempt Judgment based on Ms. Lacher's refusal to comply with court orders and general abuse of the judicial process. As required by the state legislature, the Superior Court later fulfilled its duty to report Ms. Lacher's unethical conduct to the relevant regulatory agency that polices such conduct. Cal. Bus. & Prof. § 6087.7(a) ("A court *shall* notify the State Bar of . . . [a] final order of

13

contempt imposed against an attorney that may involve grounds warranting discipline under this chapter.") (emphasis added).[3]

These acts fall squarely within the § 362(b)(4) exception to the automatic stay. There is no real dispute that the Superior Court is a governmental unit. In addition, the Ninth Circuit has applied § 362(b)(4) to governmental acts where the purpose of the act is to effectuate public policy as opposed to protect the governmental unit's pecuniary interest. *See Dingley v. Yellow Logistics, LLC (In re Dingley)*, 852 F.3d 1143, 1146-47 (9th Cir. 2017). It is evident from the simple fact that the Superior Court gained nothing pecuniarily from referring Ms. Lacher to the State Bar that the referral was meant to effectuate public policy (namely, to protect the public from ethical misconduct) and not to collect money from Ms. Lacher.

Ms. Lacher's entire argument against application of § 362(b)(4) rests on the notion that Ms. Lacher could "purge" the "professional consequences" of the disciplinary proceeding simply by paying a prepetition debt to the ECI Parties. Notwithstanding the fact that payment of a debt to the ECI Parties is irrelevant to the *Superior Court's* pecuniary

---

[3] Ms. Lacher argues that the Contempt Judgment never became final because the Superior Court did not comply with Cal. Code of Civ. Proc. ("CCP") 128(b). This argument is difficult to follow. CCP § 128(b) merely provides that the execution of a sentence within a contempt order is stayed "pending the filing within three judicial days of a petition for extraordinary relief testing the lawfulness of the court's order." The record does not reflect that Ms. Lacher filed any such petition within three judicial days of entry of the Contempt Judgment, or that Ms. Lacher otherwise timely challenged or appealed the Contempt Judgment. Thus, CCP § 128(b) does not have any effect on the Contempt Judgment.

interests, Ms. Lacher's contention is plainly untrue based on the record before us. The State Bar concluded that Ms. Lacher was unfit to practice law based on her abuse of the judicial process, and her disbarment was required as a matter of "public protection." Thus, even if Ms. Lacher satisfied the prepetition debt owed to the ECI Parties, the State Bar would not reinstate her license.

### 2. Ms. Lacher did not articulate a violation of § 524(a).

For many of the same reasons discussed above, we also reject Ms. Lacher's argument that the appellees violated the discharge injunction. A bankruptcy discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged" and "operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" § 524(a)(1), (a)(2).

Ms. Lacher argues that the Superior Court's failure to "rescind" its referral to the State Bar violated the discharge injunction because it enforced a void judgment (the ECI Judgment) and aided the State Bar's continuation of disciplinary proceedings.

Even if the ECI Judgment is ultimately discharged,[4] Ms. Lacher has not articulated any action by the appellees that would violate § 524(a). As

---

[4] The dischargeability of the ECI Judgment is currently being litigated before the bankruptcy court via an adversary proceeding initiated by the Lanes.

15

stated above, the only act by the Superior Court raised by Ms. Lacher is the prepetition referral to the State Bar. That prepetition referral neither qualified as a post-discharge enforcement of a judgment nor a continuation of a proceeding to recover a prepetition debt. Once again, the Superior Court lacks the authority to impact any ongoing State Bar disciplinary proceedings.[5]

Moreover, this Panel already determined that the State Bar's disciplinary proceedings do not violate the discharge injunction. *In re Lacher*, 669 B.R. at 562-63. As we observed, the State Bar's "disbarment recommendation was not a 'determination of the personal liability of [Ms. Lacher] with respect to' the ECI Judgment" and "the voiding of the ECI Judgment would not affect or discharge Ms. Lacher's nonmonetary

---

[5] Ms. Lacher primarily argues that the Superior Court's refusal to rescind the Contempt Judgment violates the discharge injunction because it "triggered" the ongoing disciplinary proceedings. Thus, our analysis herein focuses on the impact of the discharge injunction on those proceedings.

However, occasionally, Ms. Lacher appears to assert that the Contempt Judgment itself is unenforceable post-discharge. Section 523(a)(7) excepts from the discharge debts that are for "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit" and that are "not compensation for actual pecuniary loss." Section 523(a)(7) is self-executing, meaning "it does not require either party to obtain a judgment declaring the debt excepted from discharge." *Williams v. Meyer (In re Williams)*, 438 B.R. 679, 687 (10th Cir. BAP 2010). If the statute applies, the applicable debt is "automatically excepted" from the discharge. *Id.*

Here, Ms. Lacher has not sought a determination from the bankruptcy court regarding the dischargeability of the Contempt Judgment. To the extent Ms. Lacher believes the Contempt Judgment was discharged, she may seek clarification from the bankruptcy court. We decline to rule on this matter before the bankruptcy court has had an opportunity to do so in the first instance.

16

responsibility for the many wrongful acts she undertook in an effort to avoid paying that judgment." *Id.*

Ms. Lacher erroneously refers to the bankruptcy court's reliance on the Panel's prior decision as "collateral estoppel," also known as issue preclusion, arguing that the bankruptcy court should not have applied the doctrine of issue preclusion for several reasons. But the bankruptcy court did not need to rely on the doctrine of issue preclusion because the Panel's prior decision qualifies as law of the case, and the bankruptcy court was obligated to follow this Panel's mandate.

"Under the 'rule of mandate,' the trial court must adhere to the appellate court's decision." *de Jong v. JLE-04 Parker, L.L.C. (In re de Jong)*, 588 B.R. 879, 889 (9th Cir. BAP 2018) (citing *Stacy v. Colvin*, 825 F.3d 563, 567-68 (9th Cir. 2016)). "The rule of mandate is similar to, but broader than, the law of the case doctrine. The rule provides that any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Stacy*, 825 F.3d at 567-68 (citation modified). The trial court "commits jurisdictional error if it takes actions that contradict the mandate." *Id.* at 568 (citation modified).

Similar to the rule of mandate, "[t]he law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy*, 825 F.3d at 567. "[T]he burden lies with the party opposed to the application of the doctrine to demonstrate a substantial difference in the evidence, a

17

change in controlling law, or that application of the doctrine is unjust." *Charleston Assocs., LLC v. RA Se. Land Co. (In re Charleston Assocs.), LLC*, 2018 WL 4006298, at *11 (Bankr. D. Nev. Jul. 24, 2018).

Ms. Lacher did not meet her burden of proving that circumstances have changed since the Panel's prior decision. In her appellate briefs, Ms. Lacher states that the California Supreme Court "nullified" the State Bar's disciplinary recommendation. But the California Supreme Court simply remanded the State Bar's prior recommendation for the State Bar to assess the impact of Ms. Lacher's discharge on the disciplinary proceedings. As of December 2025, the State Bar transmitted a new recommendation of disbarment to the California Supreme Court, which remains pending. Thus, the current status of Ms. Lacher's disciplinary proceeding mirrors the status of the proceeding at the time the Panel issued its prior opinion.

Consequently, the Panel's prior conclusion that the discharge injunction does not impact the State Bar's disciplinary proceedings is law of the case.[6]

### 3. Ms. Lacher did not articulate a violation of § 525(a).

Section 525(a) "prohibits a governmental unit from denying, revoking, suspending, or refusing to renew a debtor's license solely because the debtor filed for bankruptcy or failed to pay a dischargeable

---

[6] Because we hold that the Superior Court did not violate the discharge injunction, we need not address Ms. Lacher's arguments regarding *Taggart v. Lorenzen*, 587 U.S. 554 (2019), which would only be relevant if an actual violation occurred.

18

debt." *Albert-Sheridan v. State Bar of Cal. (In re Albert-Sheridan)*, 960 F.3d 1188, 1196 (9th Cir. 2020) (citation modified). "[T]he failure to pay a dischargeable debt must alone be the proximate cause of the cancellation – the act or event that triggers the agency's decision to cancel, whatever the agency's ultimate motive in pulling the trigger may be." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 301-02 (2003).

For all the same reasons above, the Superior Court's prepetition referral (which occurred prior to Ms. Lacher obtaining a discharge, and prior even to Ms. Lacher filing for bankruptcy) does not violate § 525(a).

Ms. Lacher's arguments with respect to § 525(a) echo her contentions regarding § 524(a), namely, that the Superior Court's failure to rescind its referral qualified as an action to enforce a prepetition debt because the referral facilitated the ongoing disciplinary proceedings against Ms. Lacher. As with our discussion regarding the applicability of the discharge injunction, the Panel already decided that the State Bar's disciplinary proceeding does not violate § 525(a). As we stated, "the disciplinary action is not 'solely' due to Ms. Lacher's failure to pay a debt." *In re Lacher*, 669 B.R. at 564. "Rather, it was Ms. Lacher's willful violation of court orders, pattern of misconduct, abuse of the judicial process, and 'unwillingness to conform to ethical responsibilities' that led to her suspension and pending disbarment." *Id.*

For the same reasons discussed above, these conclusions are law of the case. Ms. Lacher has not met her burden of demonstrating a change of

19

circumstances since the Panel's prior decision. Thus, because the underlying disciplinary proceeding does not violate § 525(a), Ms. Lacher's contention that the Superior Court violated § 525(a) by "maintaining" its referral to the State Bar also does not violate § 525(a).

**B.     The bankruptcy court did not err in granting the Motion to Dismiss.**

Unlike its ruling on the Motion for Contempt, the bankruptcy court rested its ruling on the Motion to Dismiss on judicial and quasi-judicial immunity. Of course, whether or not the Superior Court and Judge Caietti are immune, the bankruptcy court properly granted the Motion to Dismiss because Ms. Lacher has failed to state any claim for relief under §§ 362, 524, and 525. Ms. Lacher's complaint is largely based on the same arguments raised in the Motion for Contempt, and for the same reasons stated above, Ms. Lacher's claims lack merit. Nevertheless, we also affirm the bankruptcy court's conclusion that the Superior Court and Judge Caietti are immune from Ms. Lacher's claims.

Judges historically have been granted absolute immunity from suits for their judicial acts. *Forrester v. White*, 484 U.S. 219, 225-28 (1988). Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *Butler v. Gammick*, 173 F.3d 859 (table), 1999 WL 197253, at *1 (9th Cir. 1999) (noting

20

judicial immunity bars claims that judge conspired with others to render an adverse ruling).

"The factors relevant in determining whether an act is judicial relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (citation modified).

Ms. Lacher contends that Judge Caietti lacks judicial immunity because her referral was "administrative" and did not qualify as a "judicial act." We firmly disagree. A cornerstone of a judge's function is to maintain the judicial integrity of the court. A significant part of this role involves policing misconduct of attorneys that appear before the court. In fact, the California legislature has enshrined this role into law by requiring judges to report professional misconduct to the State Bar. Cal. Bus. & Prof. Code § 6086.7(a)(1); *see also Baldwin-Kennedy v. Garrett*, No. 2:24-CV-02753-DAD-CSK, 2025 WL 1263530, at *4 (E.D. Cal. May 1, 2025) (holding that the court's referral of an attorney to the State Bar for an ethical violation that occurred in its court qualified as a "judicial act"); *Sussman v. San Diego Police Dep't*, No. 20-cv-01085-JO-MDD, 2022 WL 961559, at *6 (S.D. Cal. Mar. 30, 2022) (same).

21

In light of the above, Judge Caietti's referral of Ms. Lacher to the State Bar for her ethical violations was a "judicial act," and Judge Caietti is judicially immune from Ms. Lacher's complaint regarding that act.[7]

## C. The bankruptcy court did not abuse its discretion in denying leave to amend.

Finally, Ms. Lacher contends that the bankruptcy court erred in denying Ms. Lacher leave to amend her complaint. "When amendment would be futile, the bankruptcy court does not abuse its discretion in dismissing the complaint without leave to amend." *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 356 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015). Leave to amend is futile where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

---

[7] Before the bankruptcy court, the parties also disputed whether the clerk of the Superior Court was immune under the doctrine of quasi-judicial immunity. On appeal, Ms. Lacher does not discuss the immunity held by the clerk of the Superior Court, and does not mention quasi-judicial immunity at all. Thus, she has waived any argument that the bankruptcy court erred in holding that the clerk of the Superior Court was immune under the doctrine of quasi-judicial immunity. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

In any event, court clerks enjoy quasi-judicial immunity for acts that are "a part of the judicial function." *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 952 (9th Cir. 2002). Here, the clerk of the Superior Court merely carried out Judge Caietti's order of referral, and thus the clerk's actions are part of the judicial function.

Although Ms. Lacher contends that the bankruptcy court erred by denying her request for leave to amend her complaint, Ms. Lacher does not articulate how exactly she would amend the complaint to state a cognizable claim for relief. We cannot envision any amendment that would cure the fatal defects in Ms. Lacher's complaint. Thus, the bankruptcy court did not err in concluding that any amendment would be futile.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order denying the Motion for Contempt and the order granting the Motion to Dismiss.